UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF WISCONSIN

PAUL SHEKOSKI                                          Case No. 2:26-cv-1183
14160 Stone Eagle Place
Colorado Springs, CO 80921,

        Plaintiff,

    v.

PRIMEX, INC.
PRIMEX WIRELESS, INC.,
COMBEX, INC.,
METEO SOLUTIONS COMPANY

        Defendants.

## COMPLAINT

Plaintiff Paul Shekoski ("Shekoski"), for his Complaint against Defendants Primex, Inc.;

Primex Wireless, Inc.; Combex, Inc.; and Meteo Solutions Company (collectively, "Primex"),

states as follows:

### INTRODUCTION

1. This case arises from Defendants' refusal to honor the contractual promises they

made to the executive who spent two decades transforming Primex from a small family business

into a sophisticated, professionally managed technology company. Plaintiff Paul Shekoski served

as Primex's Chief Executive Officer for twenty years, leading the company's growth,

modernization, and strategic evolution while helping build substantial enterprise value.

2. In recognition of those contributions, Primex adopted and entered into a deferred

compensation arrangement designed to reward Shekoski with an equity-based payment upon the

occurrence of specified distribution events, including his voluntary retirement for "Good Reason."

3. After Primex's founder, Fred Kroemer, passed away in or around November 2021, the company's governance fundamentally changed. Decision-making became fragmented, communication deteriorated, and the collaborative relationship that had existed between Shekoski and Primex's ownership gave way to uncertainty and indecision.

4. As Shekoski reached the age expressly identified in the Compensation Plan as constituting "Good Reason" for retirement, and as he worked to stabilize the company and position it for its next chapter, he exercised his contractual right to retire, thereby triggering the very distribution event the parties had negotiated years earlier.

5. Rather than fulfill its contractual obligations, Primex refused to initiate the valuation process required by the Compensation Plan, refused to pay the deferred compensation Shekoski had earned, refused to distribute amounts owed under a separate non-qualified deferred compensation plan, and ignored demands to comply with its contractual duties.

6. Instead, only after Shekoski had resigned and vested his rights under the Compensation Plan, Primex attempted to retroactively characterize his separation as a termination "for Cause" based on unfounded allegations concerning expense reimbursements and confidential information. Those allegations are false, inconsistent with Primex's decades-long acceptance of Shekoski's conduct and serve only as a pretext to avoid paying the substantial compensation due under the parties' agreements.

7. The Compensation Plan provides a detailed valuation procedure to establish the company's fair market value, yet Primex has refused to participate in that process altogether. Having denied Shekoski the benefits of the agreements, while simultaneously seeking to bind him to an expansive post-employment noncompetition covenant, Primex has attempted to retain the benefit of its bargain without performing its own obligations.

8. Left without the compensation he earned after decades of service and faced with an unenforceable restraint on his ability to pursue future employment, Shekoski brings this action to enforce the parties' contracts, compel Primex to comply with the valuation and payment procedures it promised to follow, recover the deferred compensation to which he is contractually entitled, obtain declarations confirming his rights under the Compensation Plan, adjudicate the Primex's defenses to payment, which are meritless, and invalidate the unlawful noncompetition restrictions that Primex can no longer legally enforce.

## PARTIES

9. Shekoski is the former Chief Executive Officer ("CEO") of Primex. He is a citizen of Colorado and resides in Colorado Springs.

10. Primex consists of four privately held companies owned by the Koermer family. Primex provides enterprise technology, wireless/IoT, time synchronization, and environmental monitoring solutions to commercial and institutional customers, servicing customers nationally and, in some instances, internationally.

11. Primex, Inc., is a corporation organized under the laws of Wisconsin, with its principal place of business in Lake Geneva, Wisconsin.

12. Primex Wireless, Inc., is a corporation organized under the laws of Wisconsin, with its principal place of business in Lake Geneva, Wisconsin.

13. Combex, Inc., is a corporation organized under the laws of Wisconsin, with its principal place of business in Lake Geneva, Wisconsin.

14. Meteo Solutions Company is a corporation organized under the laws of Wisconsin, with its principal place of business in Lake Geneva, Wisconsin.

**JURISDICTION AND VENUE**

15.     This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. The parties also selected Wisconsin as the exclusive jurisdiction for claims arising from the contracts at issue—i.e., the Executive Deferred Compensation Plans of each business comprising Primex (collectively, the "Compensation Plan"), compiled as Exhibit A, and the related Executive Deferred Compensation Plan Participation Agreements, compiled as Exhibit B (collectively, the "Participation Agreement"). Compensation Plan § 11.4; Participation Agreement § 17.

16.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and because the parties agreed in the Participation Agreement that an action to enforce the agreement may only be brought in Milwaukee, Wisconsin. Participation Agreement § 17.

**RELEVANT FACTS**

I.     *The Primex Compensation Plan*

17.     Shekoski served as Primex's CEO for over 20 years.

18.     During his tenure, Shekoski led the company's transformation from a business selling clocks and clock parts in mail order catalogs into two focused technology companies with software recurring revenue service agreements and a future in Software as a Service and IoT monitoring.

19.     These two main businesses were created, managed, and grown into market leaders with brand equity and a sustainable competitive position under Paul's leadership, with professional systems, processes, and key talent management in place for sustained longevity.

20. To achieve this transformation, Shekoski led and managed the business, including by working with ownership, Board, executives, advisors, lenders, and other professionals on strategy, operations, financial performance, technology investment, and long-term enterprise value.

21. In recognition of Shekoski's valuable services and to retain and incentivize Shekoski, Fred Kroemer verbally committed upon hiring to align Paul's incentive system with ownership to remove any agency challenges.

22. This plan was memorialized over a decade later by the execution of the Compensation Plan.

23. Shekoski and Primex entered into the Compensation Plan and Participation Agreement in 2019.

24. Shekoski is the only Compensation Plan participant.

25. The Compensation Plan and Participation Agreement provide for Shekoski to receive 8% of the Company's equity upon the occurrence of a distribution event, including upon voluntary termination of his services for Good Reason.

26. Good Reason includes Shekoski being 62 years of age.

II. *Primex Undergoes Material Changes as a Result of Fred Kroemer's Passing.*

27. In or around November 2021, Fred Kroemer passed away, leaving Karen Kroemer as the Primex board chair and majority voting member of Primex.

28. Karen Kroemer did not decisively lead the company like Fred had done for many years, with success, and she experienced a number of health setbacks during and after Fred's passing.

29. In addition, Stephen Kroemer—Fred and Karen's son, who is a Primex minority shareholder, was intentionally kept out of the business at Fred's and Karen's explicit direction, has almost continually lived in the Kroemer family home for 50+ years, and has no meaningful corporate or business experience—began to influence and control Karen and her business access to the company.

30. Shekoski had regular communication and a strong partnership with Fred and Karen for years, but the same spirit of partnership did not remain with Fred gone.

31. Stephen's interference with Karen is to such a degree that the Kroemer family's long-term estate planner resigned due to his suspicion that Stephen was accessing Karen's emails and portraying to be her via correspondence.

32. In fact, Shekoski was unable to reach Karen for extended periods of time, despite her being the Primex board chair. Shekoski often had to go through Stephen when making efforts to communicate with Karen.

33. Shekoski has not had direct contact with Karen in years, despite his multitude of outreach efforts, including visits to her house multiple times.

34. As a result of the significant changes within the Kroemer family, in 2023, Shekoski informed Primex that he expected to retire at the end of a three-year plan, which would end in 2026.

35. By 2025, Primex experienced significant governance and liquidity challenges and Shekoski felt he needed to solve a pending liquidity issue and brought forward several proposals to that end, including a sale of one of the businesses and a confirmed Letter of Intent for such sale for $50 million, should that be what Karen desired.

36. Shekoski worked with company personnel and outside advisors regarding liquidity, cash flow, valuation, strategic alternatives, and related issues. He authorized independent reviews, audits, and forecasts of the financial statements, along with the company's then Chief Financial Officer (now CEO), Dan Lindberg. The Intent was to provide shareholders with an independent prospective from the Executive Team.

37. In part due to those governance and liquidity issues, his frustrations with the changes that he felt would continue to persist and that he could not perform his duties as CEO and Board Director, and because he had reached the age specified in the Compensation Plan to start taking distributions, Shekoski also decided to retire per his documented intent years prior.

III. *Shekoski Resigns & Triggers a Distribution Event Under the Compensation Plan.*

38. On January 14, 2026, Shekoski submitted the letter of resignation attached as Exhibit C, with his resignation being effective immediately.

39. Shekoski's resignation letter states that his voluntary resignation vested his rights under the Compensation Plan and constituted a "Distribution Event," which the Compensation Plan defines as "an event the result of which a Participant will be entitled to receive a distribution of his or her vested Account balance . . . to occur on . . . (c) Participant's voluntary Termination of Full-Time Employment for Good Reason." *See* Exhibit A at pg. 4 definition of "Distribution Event."

40. Shekoski noted he was voluntarily terminating his employment for "Good Reason" under the Compensation Plan, which is defined to include Shekoski being age sixty-two or older. *See* Exhibit A at pg. 5 definition of "Good Reason." Shekoski was 62 when he resigned.

*IV.* *Primex Attempts to Retroactively Terminate Shekoski For Cause.*

41. Despite the triggered Distribution Event, Primex refused to compensate Shekoski under the Compensation Plan.

42. Instead, two days after Shekoski resigned, Primex stated that Shekoski's termination was for Cause.

43. Primex claimed Shekoski violated his Non-Competition and Confidentiality Agreement and that he improperly charged personal expenses to Primex.

44. Shekoski believes these allegations were a pretext to avoid paying him out under the Compensation Plan due in part to the Company's liquidity issues.

45. Shekoski was and is unaware of any investigation into his actions that suggested any likelihood that Primex would terminate him.

46. After all, he had been the one constant Primex leader while the family underwent significant change due to Fred's death — an event that the family never recovered from in terms of its ability to operate and lead the business.

47. While Primex claimed to have been investigating Shekoski, the reality was that Shekoski himself had been working to investigate company controls and position it to have audited financial statements rather than reviewed financial statements only. This included review of company expense reporting and protocols.

48. Shekoski fully supported and was working towards these goals, not hiding his actions, including with respect to his personal expenses. Indeed, Shekoski did not engage in any wrongdoing with respect to any personal expenses, never hid his reimbursements, or disguised his expenses to appear other than they were. For decades, Shekoski's expenses were approved by

company leaders without issue, which was of no surprise since Shekoski was permitted to charge certain expenses to the business as a benefit.

49. Primex also made meritless allegations regarding data Shekoski had on his personal devices, which would have been of no value to Shekoski — a 62-plus-year-old retiree with no plans to continue working in the industry for a competitor, or otherwise. Shekoski planned merely to enjoy his retirement.

50. Whatever documents Shekoski had in his possession were in connection with his role at Primex. There was no wrongdoing or nefarious taking of data for improper purpose as Primex claimed, and Shekoski has fully cooperated with, and is the principal driver of the third-party e-forensic provider Primex selected to retrieve all documents. In fact, Primex's e-forensic vendor has noted Shekoski's availability and cooperation.

51. In sum, the data allegations Primex made do not constitute grounds to deny Shekoski his compensation.

V.    *Primex Refuses to Adhere to the Compensation Plan.*

52. To date, Primex refuses to compensate Shekoski under the Compensation Plan.

53. The Compensation Plan requires payment based the "Current Value" of the company, defined as the fair market value of the company as a going concern without any minority interest discount or control premium. *See* Exhibit A pg. 3 at "Current Value" definition.

54. Shekoski and the Primex board of directors are to attempt to agree on the "Current Value" and, if they do not, Primex and Shekoski are to select an independent appraiser to assess the value, at Primex's expense. *See id.*

55. If Shekoski and Primex cannot agree on an appraiser, they are to each appoint an appraiser and each are to submit an appraisal. If the appraisals are within 10% of the numerical

average of both appraisals, the market value shall be determined by taking the average of both. *Id.*

56. If the appraisals are not within 10% of the numerical average of both appraisals, the two appraisers shall mutually select a third appraiser, within two weeks of the six-week period. *Id.*

57. Months passed after Shekoski's resignation that triggered the appraisal process and yet Primex never sought to appoint an appraiser or otherwise engage in the process required by the Compensation Plan to compensate Shekoski.

58. Nor is Shekoski in a position to assess the value through an appraiser he selects because he no longer has access to Primex records.

59. On April 24, 2026, Shekoski demanded payment under the Compensation Plan and production of records. *See* April 24, 2026 Letter, attached as Exhibit D.

60. But Primex ignored Shekoski's demand.

61. Shekoski then retained Wisconsin counsel to pursue claims and compel adherence to the Compensation Plan. On June 23, 2026, counsel inquired whether Primex would commence the valuation process and indicated Shekoski needed confirmation one way or another by the following Monday, June 30, 2026. But Primex again ignored Shekoski's request.

62. By letter dated July 1, 2026, attached as Exhibit E, Shekoski indicated he would file this suit absent written confirmation by July 6, 2026 that Primex would proceed with the valuation process, including provision of data needed to assess the company's value and either (i) agree to proceed with Shekoski's chosen appraiser or (ii) Primex's party appointed appraiser.

63. Primex responded by agreeing to the valuation process but only as part of exploratory global settlement efforts, while reserving all claims and defenses and maintaining

that Shekoski is not entitled to compensation under the Compensation Plan due to Primex's claim that it terminated Shekoski for cause and he therefore forfeited the funds.

64. Primex also did not identify any appraiser amenable to it, gave no timing, and denied Shekoski's request for business records necessary to value the business.

65. Shekoski needs resolution of all issues that stand in the way of his payment, including adjudication of the purported defenses to payment raised by Primex — which are meritless. Shekoski did not engage in any wrongdoing, including as to his expenses or company data.

66. Further, Shekoski needs the valuation process to proceed per the Compensation Plan—not on terms and conditions set by Primex in connection with settlement talks that Primex may withdraw from at any time without consequence.

VI. *Shekoski is Subject to an Overbroad and Unenforceable Non-Compete*.

67. Given Primex's refusal to compensate Shekoski, he is now left to challenge the two-year non-compete that Primex imposed during his prior employment.

68. The non-compete is contained in the Non-Competition and Confidentiality Agreement attached as Exhibit F and reads in full as follows:

> **8. Covenant Not to. Compete.** During my employment with PFOC and for a period of twenty-four (24) months after the termination of my employment with PFOC for any reason, I will not, directly or indirectly, own, manage, operate, control, be employed by or otherwise render services (whether as an employee, consultant, contractor, director, or otherwise) to any Competing Organization, in any geographic location where PFOC is engaged in business (including selling or marketing PFOC products or services), (a) in a capacity that involves, directly or indirectly, any Competing Product (b) in a position with responsibilities similar to those I had with PFOC at any time during the three years preceding the termination of my employment with PFOC, or (iii) in any other capacity on behalf of, or for the benefit of, a Competing Organization where, based on consideration of my responsibilities,

there is a substantial risk that I will disclose or use (whether intentionally or inadvertently) Confidential Information. Nothing in this Agreement shall prevent me from owning not more than two percent (2%) of the total shares of all classes of stock outstanding of any publicly held Competing Organization. I agree that if I violate any of the terms of this Section, the period of non-competition shall be extended by a period of time equal to that period beginning when the activities constituting such violation commenced and ending when the activities constituting such violation terminated.

Exhibit F ¶ 8.

69. When he retired, Shekoski planned to adhere to the non-compete and stated just that in his resignation letter. *See* Exhibit C.

70. Shekoski has not pursued any professional opportunities, expecting Primex to honor its commitments pursuant to the Compensation Plan.

71. However, Primex refuses to pay Shekoski under the Compensation plan and the NQDC Plan and so Shekoski is considering a return to the market.

72. The Primex non-compete is overbroad and unenforceable and should be declared void and illegal under Wis. Stats. § 103.465 for at least the following reasons:

    a. The definition of Competing Organization embedded in the noncompete encompasses not only the geographic areas where Primex does business but also those areas where Primex plans to do business, which is unknown to Shekoski.

    b. The definition of Competing Products, which is incorporated in the definition of Competing Organization discussed above and is also embedded in the noncompete provision itself is overbroad and incomprehensible. It refers to all "products, processes, or services of any person or organization other than [Primex] in existence or under

development or **discussed in Roadmap Documents or Meetings**, which are the substantially the same, may be substituted for, or applied to substantially the same end use as, the products, processes, or services with which [Shekoski] worked at any time during the last three years of [his] employment with [Primex] or about which [Shekoski] possesses Confidential Information through [his] work with [Primex]." <u>Exhibit F</u> ¶ 3(b) (emphasis added). "Roadmap Documents or Meetings," in turn, means "any documents, information or meetings that are commonly referred to within [Primex] as Roadmap documents, information or meetings." Those terms are incomprehensible and could refer to anything, including documents that are mundane minutiae.

   c. The provision contains an illegal tolling provision.

   d. The two-year duration is overbroad and unnecessary to protect Primex's interests.

73. The Primex employee non-solicitation provision, Compensation Plan ¶ 10, is unenforceable under *Manitowoc Company, Inc. v. Lanning*, 2018 WI 6 because it impermissibly extends to "any employee;" contains an illegal no hire provision barred under *Heyde Cos., Inc. v. Dove Healthcare, LLC*, 2002 WI 131; contains an illegal tolling provision; and the two-year duration is overbroad and unnecessary to protect Primex's interests.

74. Primex also materially breached the Non-Competition and Confidentiality Agreement by failing to pay Shekoski the compensation due to him under the Compensation Plan and the NQDC Plan, thereby excusing Shekoski's performance with respect to his restrictive covenants.

75.     Shekoski has complied with his restrictive covenants to date but cannot continue to do so and seeks to have the restriction declared unenforceable.

**COUNT I**
**BREACH OF CONTRACT:**
**COMPENSATION PLAN AND PARTICIPATION AGREEMENT**

76.     Shekoski incorporates the above allegations.

77.     Primex entered into a valid contract with Shekoski for deferred compensation under the Compensation Plan and Participation Agreement.

78.     Primex breached the Compensation Plan and Participation Agreement by, among other things, failing to initiate or follow the valuation process and failing to pay Shekoski under the plan. *See* Exhibit A Compensation Plan § 8.2(a); Exhibit B Participation Agreement § 6(a).

79.     Primex's breaches were material.

80.     Shekoski has been and continues to be damaged by Primex's breach in an amount to be determined at trial, including but not limited to, the compensation due but not paid to Shekoski, as well as Shekoski's attorney's fees and costs.

**COUNT II**
**DECLARATORY JUDGMENT – COMPENSATION PLAN**

81.     Shekoski incorporates the above allegations.

82.     Primex has wrongfully contended and maintains that Shekoski was terminated for Cause and has therefore refused to pay him the compensation due under the Compensation Plan.

83.     An actual, present, and justiciable controversy exists concerning whether Shekoski is entitled to compensation under the Compensation Plan.

84.     The Compensation Plan provides that a Distribution Event includes a voluntary termination of full-time employment for Good Reason. Compensation Agreement § 3.

85.     The Compensation Plan provides that being age 62 constitutes Good Reason. *Id.*

86. The Compensation Plan provides that the participant's account vests upon the participant's voluntary termination of full-time employment for Good Reason. *Id.* § 7.1(c).

87. Shekoski voluntarily terminated his full-time employment at 62 years of age.

88. Shekoski seeks declaration that, under the Compensation Plan: (a) his voluntary termination was for "Good Reason"; (b) he was not terminated for "Cause"; (c) his interests vested upon his voluntary termination; and (d) his voluntary termination constituted a Distribution Event under the Compensation Plan.

## COUNT III
## DECLARATORY JUDGMENT – RESTRICTIVE COVENANTS

89. Shekoski incorporates the above allegations.

90. Shekoski and Primex are party to the Exhibit F Non-Competition and Confidentiality dated February 4, 2014.

91. The Non-Competition Agreement is governed by Wisconsin law including Wis. Stat. § 103.465. *Id.* ¶ 21.

92. An actual, present, and justiciable controversy exists concerning whether the restrictive covenants set forth in the Non-Competition Agreement are enforceable given Primex's failure to compensate Shekoski as agreed and what business Shekoski can lawfully engage in.

93. The restrictive covenants are overbroad, unreasonable, and unreasonably necessary to protect Primex's legitimate business interests for the reasons discussed herein.

94. Shekoski seeks a declaration that the various restrictive covenants in the Non-Competition Agreement (non-solicit and non-competes) are unenforceable and void for all the reasons discussed above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Shekoski respectfully requests that this Court enter judgment in its favor and against Defendant Primex, and award the following relief:

a) Specific performance of Primex's contractual obligations under the Compensation Plan and Participation Agreement;

b) Damages in an amount to be determined at trial, not less than the amount due under the Compensation Plan, and Participation Agreement;

c) Pre-judgment and post-judgment interest, including contractual interest as provided in the Compensation Plan and Participation Agreement;

d) Recovery of all costs and expenses incurred in connection with this action, including reasonable attorneys' fees and costs of enforcing the Participation Agreement, as provided in the Participation Agreement;

e) Declaration that Shekoski is entitled to compensation under the Compensation Plan and Participation Agreement;

f) Declaration that the restrictive covenants of the Non-Competition Agreement, including in particular the non-solicitation and non-competition provisions, are unenforceable and void; and

g) All other and further relief as this Court deems just and proper.

16

## JURY DEMAND

Shekoski hereby demands a trial by jury on all issues so triable.

Dated this 6th day of July, 2026.

Respecfully submitted,

By: */s/ Maria L. Kreiter*
Maria L. Kreiter, State Bar No. 1046265
Kameron Dix, State Bar No. 1139985
Godfrey & Kahn, S.C.
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Phone: 414-273-3500
Fax: 414-273-5198
Email: mkreiter@gklaw.com
kdix@gklaw.com

Attorneys for Plaintiff Paul Shekoski